IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVERLINE BRISTER,                           )    Civil No.: 3:12-cv-00726-JE
                                            )
                      Plaintiff,            )    FINDINGS AND
                                            )    RECOMMENDATION
          v.                                )
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
                      Defendant.            )
_____)

          Merrill Schneider
          Schneider Kerr Law Offices
          PO Box 14490
          Portland, OR 97293

                Attorney for Plaintiff

          S. Amanda Marshall, U.S. Attorney
          Adrian L. Brown, Asst. U.S. Attorney

FINDINGS AND RECOMMENDATION - 1

1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902


Daphne Banay
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

   Attorneys for Defendant

JELDERKS, Magistrate Judge:

  Plaintiff Everline Brister brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her applications  for Disability Income Benefits (DIB) and Supplemental Security

Income (SSI) under the Social Security Act (the Act).  Plaintiff seeks an Order remanding the

action to the Social Security Administration (the Agency) for an award of benefits.  In the

alternative, she seeks an Order remanding the action for further proceedings.

  For the reasons set out below, the Commissioner's decision should be remanded to the

Agency for further proceedings.

**Procedural Background**

  Plaintiff filed applications for DIB and SSI on December 2, 2008, alleging that she had

been disabled since July 31, 2006, because of high blood pressure, vision problems, angina,

migraines, an enlarged heart, and high cholesterol.

  After her claim had been denied initially on February 20, 2009, and on reconsideration on

May 21, 2009, Plaintiff timely requested an administrative hearing.

FINDINGS AND RECOMMENDATION - 2

On June 29, 2010, a hearing was held before Administrative Law Judge (ALJ) Steve Lynch, in Portland, Oregon.   Plaintiff and Jennifer Gafney, a Vocational Expert (VE), testified at the hearing.

In a decision filed on July 14, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  While her request for review of that decision was pending before the Appeals Council, Plaintiff submitted an assessment prepared by Dr. Kimberly Goslin, her treating physician, dated November 19, 2011.

The Appeals Council considered Dr. Goslin's opinion and made it part of the record.  In a decision dated February 22, 2012, the Appeals Council found that neither this evidence nor the arguments submitted by Plaintiff's counsel provided a basis for altering the ALJ's decision, and denied Plaintiff's request for review.  Upon the Appeals Council's denial of Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner.  Plaintiff challenges that decision in the present action.

## Background

Plaintiff was born on July 13, 1964, and was 42 years old at the time of her alleged onset of disability in 2006.  She has a high school education and has past relevant work experience as a childcare attendant, mail sorter, receptionist, general office clerk, and hair stylist.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

FINDINGS AND RECOMMENDATION - 3

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that

the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this

burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  Id.

### Medical Record

Like the parties, I will not summarize the medical record separately, and will address

relevant evidence from that record in discussing Plaintiff's contentions below.

### Testimony

#### Plaintiff

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff has an unusually located abdominal hernia that causes pain, prevents her from

comfortably lying on her side, and limits her ability to relieve swelling in her legs by elevating

them while sitting.  Plaintiff planned to have surgery for the hernia but first needed to see a

kidney specialist because she had kidney failure and needed to consider how surgery would

affect her kidneys.  Plaintiff had inflamation throughout her body and had lost some eyesight

because of diabetes.  Many of Plaintiff's medical records "contradict themselves back and forth"

and it is difficult to determine the causes of some of her medical problems.

FINDINGS AND RECOMMENDATION - 5

Plaintiff eats "maybe one meal a day." She is 4 feet 10 inches tall and weighs approximately 240 pounds. Because of her hernia, "everything sits there and doesn't go down." Much of Plaintiff's weight is fluid.

Plaintiff has sleep apnea and uses a CPAP machine. Though the machine helps her sleep, she continues to awaken several times every night because of pain.

Plaintiff does not know what causes the significant swelling she experiences in her legs. Doctors cannot tell her why she experiences pain "literally all over." Because of swelling, Plaintiff cannot wear shoes. She wears flip-flops instead. She can bathe herself, but needs her children's help to keep her from falling after she has finished. Plaintiff's children do much of her shopping. She can shop for up to 10 or 15 minutes, and cannot stand for long or wait in long lines. Sometimes she is able to prepare simple meals.

Plaintiff experiences constant pain, and cannot remember her last pain free moment. She takes pain medications, including Oxycodone. She also takes muscle relaxers and nitroglycerin. Plaintiff's medications make her tired and her concentration is poor. Because of fatigue and swelling in her legs, Plaintiff lies down for about half the time during the day. She cannot sit for more than 15 or 20 minutes at a time without needing to get up, and cannot stand for more than 15 or 20 minutes at a time.

Plaintiff used to earn income by braiding hair, but can no longer do that work because she had lost feeling in her finger tips and her hands go numb. Plaintiff wears her hair in a pony tail because she can no longer use a curling iron.

**VE**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education, and past relevant work who had the residual functional capacity required to perform

sedentary work subject to the following limitations: the individual could lift 10 pounds occasionally and less than 10 pounds frequently, could stand and walk up to 2 hours per day, could sit for an unlimited period of time, could occasionally reach overhead, and could perform only simple, routine tasks.  The VE testified that an individual with these limitation could not perform any of Plaintiff's past relevant work.

The ALJ posed a second vocational hypothetical including the restrictions set out in the first, but adding a requirement that the individual be able to shift between sitting and standing every hour.  The VE testified that the described individual could work as a "call out clerk" or as a cashier if only a minor shift of position was required, but could not work as a call out clerk if the individual needed to stand for several minutes every hour.  After further discussion with the ALJ, the VE testified that the individual could also work as a hand packager, but that the number of positions available at the state and national level would be reduced by 90 percent.

The ALJ posed a third hypothetical limiting the individual to no more than frequent fingering.  The VE testified that this added restriction would eliminate the hand packager position, but would allow work as a call out clerk or cashier.

The ALJ posed a fourth hypothetical adding a requirement that the individual be allowed an additional one hour rest period during which she could lie down.  The VE testified that this restriction would preclude performance of competitive employment.

Plaintiff's counsel asked the VE about the effect of adding a requirement that the individual be allowed to elevate her feet above the level of a footstool.  The VE testified that this restriction would preclude competitive employment or would require an employer's specific approval.

Plaintiff's counsel posed another hypothetical adding  limitations in concentration and pace that could cause the individual to be off task for a third of the work day.  The VE testified that the described individual could not sustain competitive employment.

### ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on July 31, 2006.

At the second step, the ALJ found that Plaintiff had the following  severe impairments: cervical degenerative disc disease, degenerative joint disease of the right knee, obesity, obstructive sleep apnea, hypertension, and residual symptoms of midline abdominal hernia.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next found that Plaintiff had the  residual functional capacity (RFC) required to perform sedentary work as defined in the relevant regulations, except that she was limited to occasional overhead reaching and was restricted to simple, routine, repetitive work.  He found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with this RFC assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform any of her past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform "other work" that existed in substantial numbers in the national economy.  As representative examples of such work, he cited call out clerk and cashier positions.  Based upon that finding, he concluded that Plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If it is based upon substantial evidence, the Commissioner's decision must be upheld, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ erred in failing to find that her headaches, anemia, and diabetic retinopathy were "severe" impairments and in failing to include limitations arising from

these impairments in his assessment of her RFC.  She argues that this action should be remanded

for further consideration in light of Dr. Goslin's post hearing assessment.  Plaintiff also contends

that the ALJ erred in finding that she was not wholly credible, and erred in relying on VE

testimony that was inconsistent with the Dictionary of Occupational Titles (DOT).

I have concluded that the significance of  Dr. Goslin's post hearing opinions is the most

important issue in determining the correct disposition of this action, and will address it first.

1. **Dr. Goslin's Post Hearing/Decision Assessment**

As noted above, the ALJ issued his decision on July 14, 2010.  More than 16 months

later, while her request for review by the Appeals Council was pending, Plaintiff submitted an

assessment by Dr. Kimberly Goslin dated November 19, 2001.  Dr. Goslin, a treating physician,

set out her opinions concerning Plaintiff's impairments and limitations in a form dated October

27, 2011, which Plaintiff's counsel had sent to her.  The document misinformed Dr. Goslin that

Plaintiff was "awaiting a hearing before an administrative law judge," and accurately but

irrelevantly added that it was sometimes possible to ask an ALJ to make a decision on the record

without holding a hearing.  That of course was not possible in this case, as the hearing had

already been held.

In her assessment, Dr. Goslin indicated that she had been treating Plaintiff since June,

2009.  She reported that Plaintiff's neurologic disorders included myopathy, neuropathy,

migraines, and cervical and lumbosacral radiculopathy, and opined that these caused Plaintiff

"severe pain, headaches, weakness, numbness, tingling, impaired gait, and impaired breathing."

Dr. Goslin opined that, during an 8-hour work day, Plaintiff could stand and/or walk for 10

minutes at a time, for a total of no more than one hour, and that she could sit for up to 30 minutes

at a time with frequent changes in position for a total of no more than three hours.  She stated that Plaintiff needed to lie down frequently.

Dr. Goslin opined that weakness, pain, and numbness limited Plaintiff to only occasional reaching, handling, and fingering, and that Plaintiff would experience these symptoms during 2/3 of a workday.  She further opined that frequent migraines and an exacerbation of pain with activity would cause Plaintiff to miss work more than 2 days per month, and that Plaintiff's symptoms would likely worsen if she "were placed in a competitive work environment."

The Appeals Council considered Dr. Goslin's assessment, made it part of the record, and concluded that it did not provide a basis for altering the ALJ's decision.

When the Appeals Council considers new material submitted after an ALJ has issued a decision, that material becomes part of the administrative record which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.  Brewes v. Commissioner, 682 F.3d 1157, 1162-63 (9th Cir. 2012) (citing Ramirez v. Shalala, 8 F.3d 1444, 1451-52 (9th Cir. 1993); Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000)).  In determining whether the decision denying Plaintiff's applications for benefits is supported by substantial evidence, I therefore must consider Dr. Goslin's  post decision assessment along with the other material in the administrative record.

The Commissioner argues that the decision denying Plaintiff's applications for benefits should be affirmed because Dr. Goslin "did not specifically explain how and why any of [the factors cited in her assessment] supported her opinion."  She asserts that Dr. Goslin did not provide "any supporting explanation, with reference to medically acceptable clinical and

laboratory diagnostic techniques," supporting her opinions as to the severity of Plaintiff's impairments.

The Commissioner correctly notes that a doctor's opinion need not be accepted if it does not show how a claimant's impairments cause specific functional limitations, and that a treating doctor's opinion that is brief, conclusory, and unsupported by objective medical findings need not be accepted. See Morgan v. Commissioner, 169 F.3d 595, 600-601 (9th Cir. 1999), Batson v. Commissioner, 559 F.3d 1190, 1195 (9th Cir. 2004). She contends that, because it was provided some 16 months after the ALJ issued his decision, Dr. Goslin's assessment did not reflect Plaintiff's condition at the time of that decision. She also contends that substantial evidence continues to support the conclusion that Plaintiff was not disabled because, in determining Plaintiff's RFC, the ALJ relied on the opinions of non-examining Agency physicians.

Though the Commissioner has cited a number of bases upon which an ALJ might discount or reject Dr. Goslin's assessment, it is not possible to now know how an ALJ would evaluate her opinions. The Appeals Council did not end the uncertainty concerning the correct assessment of Dr. Goslin's opinions, because it did not set out its reasons for concluding that the post hearing evidence did not establish Plaintiff's disability[1].

In Brewes, the court remanded for an award of benefits because evidence that the Plaintiff could not sustain competitive employment was uncontradicted in a record which included material that had been submitted following the ALJ's decision, which the Appeals Council had considered. Brewes, 682 F.3d at 1164. The record in the present action is not so unambiguous: It includes substantial evidence supporting the ALJ's conclusion that Plaintiff is

---

[1]The Appeals Council was not required to set out its reasons for this conclusion. See,, e.g., Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996) (Appeals Council not required to provide rationale for rejecting post decision vocational report).

FINDINGS AND RECOMMENDATION - 12

not disabled, and, with the inclusion of Dr. Goslin's assessment, substantial evidence supporting a contrary conclusion. Resolving conflicts and ambiguities in the record is ordinarily the ALJ's responsibility, e.g., Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989), and further administrative proceedings are generally appropriate if an ALJ has not had the opportunity to consider significant additional evidence. See, e.g., Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (not appropriate to remand for an award of benefits based upon "evidence that the ALJ has had no opportunity to evaluate").

Under the guidance of Brewes and related decisions, I conclude that this action should be remanded to the Agency so that an ALJ can consider the weight that should be given to Dr. Goslin's assessment and determine whether her opinions, along with the other evidence in the record, establish that Plaintiff is disabled. Remand for further proceedings is necessary here because the opinions of treating physicians are given greater weight than the opinions of other physicians. See, e.g., Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). Though the Commissioner correctly notes that the ALJ relied on the opinions of Agency consulting physicians, such opinions by themselves do not constitute substantial evidence justifying rejection of the opinions of a treating physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996). Accordingly, on remand an ALJ should consider Dr. Goslin's assessment, and determine whether the record should be further developed in light of Dr. Goslin's opinion.

My recommendation that this action be remanded for further proceedings arguably makes it unnecessary to reach Plaintiff's other arguments. Nevertheless, I will briefly address those contentions in order to create a complete record for further review and to clarify the issues that should be addressed on remand.

2. **ALJ's Assessment of "Severe" Impairments**

Plaintiff contends that the ALJ erred in failing to find that her headaches, anemia, and diabetic retinopathy were"severe" impairments at step two,  and in failing to account for these impairments in his assessment of her RFC at step four of the disability analysis.

An impairment is "severe" within the meaning of relevant regulations if it "significantly limits" a claimant's "physical or mental ability to do basic work activities" such as seeing, walking, standing, and sitting; and understanding, remembering, and carrying out simple instructions.   20 C.F.R. §§ 404.1520(c), 416.920(c), 404.152(b).  The "severity" analysis at step two of the disability determination process "is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987); SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).  An impairment is 'not severe' only if the evidence establishes that it has "no more than a minimal effect on an individual's ability to work."  Id.

**Headaches**

Plaintiff contends that the ALJ erred in omitting headaches from the list of her "severe" impairments because a neurologist had opined that "white matter abnormalities" shown on her MRI "could be related" to the severe headaches she complained of during the relevant period. She contends that her headaches have more than a minimal effect on her ability to understand, remember, and carry out simple instructions.

An MRI of Plaintiff's brain taken on June 30, 2009, showed the presence of "white matter abnormalities" that an interpreting doctor opined could be related to Plaintiff's "reported severe headaches."  In her post decision assessment, Dr. Goslin stated that Plaintiff's "neurologic

disorders" included migraines, and based her opinion that Plaintiff would miss work more than 2 days per month in part on Plaintiff's migraines.

With the inclusion of Dr. Goslin's assessment, the record includes evidence supporting the conclusion that Plaintiff's headaches were caused by a disorder that could be confirmed by acceptable diagnostic techniques. Therefore, on remand, an ALJ should reconsider whether Plaintiff's headaches constituted a severe impairment, and whether limitations related to headaches should be included in the assessment of Plaintiff's RFC.

**Anemia**

The medical record establishes that Plaintiff was significantly anemic during some of the time relevant to her applications for benefits. Plaintiff cites medical records indicating that she had a longstanding history of symptomatic anemia. Plaintiff contends that these records establish that anemia caused her "significant shortness of breath and dizziness" for more than a year following the alleged onset of her disability on June 27, 2006.

The Commissioner contends that the record does not indicate that Plaintiff's alleged shortness of breath and dizziness were caused by anemia. I agree. Dr. Carlos Sanchez, who treated Plaintiff at an emergency room on July 31, 2006, opined that Plaintiff's alleged dizziness was not caused by anemia, and the record indicates that Plaintiff's anemia resolved after she later underwent a hysterectomy and received iron replacement treatment. Under these circumstances, Plaintiff cannot establish that the ALJ erred in concluding that her anemia was not a severe impairment during the period in question.

**Diabetic Retinopathy**

The ALJ concluded that Plaintiff's diabetic retinopathy was not a severe impairment because "her eye examination reflects she still has fairly good vision . . . ." TR 55 [citations

omitted].  This conclusion is supported by the record: On December 5, 2007, Tuan Nguyen, O.D. found that Plaintiff's visual field was normal.  Non-examining agency consulting doctors who reviewed the medical record noted that an examination on August 8, 2008 had found that Plaintiff's visual acuity and fields of vision were normal, and Dr. James Dugoni, who treated Plaintiff at an emergency room on July 16, 2009, found nothing of clear significance on an opthalmologic examination.

The ALJ's conclusion that Plaintiff's diabetic retinopathy was not a "severe" impairment was supported by the record and need not be reexamined on remand.

3. **Plaintiff's Credibiltiy**

As noted above, the ALJ found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his assessment of her RFC.  Plaintiff contends that he failed to provide legally sufficient support for that conclusion.

**Standards for Evaluating Credibilty**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.  An ALJ may consider such factors as a claimant's inconsistent statements concerning her symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

**Analysis**

Plaintiff produced medical evidence of impairments that could cause some level of the symptoms she alleged, and the record includes no affirmative evidence of malingering.  The ALJ was therefore required to provide clear and convincing reasons supporting his conclusion that she was not wholly credible.

In support of his credibility determination, the ALJ noted that "several" of the impairments that Plaintiff had alleged were disabling were not found to be "severe within the ambit of the Regulations."  He asserted that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were disproportionate to and not fully consistent with the corroborating evidence.  The ALJ further observed that Plaintiff had received generally routine or conservative treatment, and that this treatment had successfully controlled her symptoms. He asserted that there were significant gaps in Plaintiff's treatment history, that Plaintiff had visited doctors for treatment on a relatively infrequent basis, and that Plaintiff had

often missed appointments and failed to comply with treatment that her doctors prescribed. Finally, the ALJ found that Plaintiff's activities of daily living were inconsistent with the degree of impairment she alleged.

In the absence of Dr. Goslin's post hearing assessment, I would conclude that the ALJ's reasons for discounting Plaintiff's credibility were sufficient. However, if Dr. Goslin's opinions as to Plaintiff's impairments and symptoms is accepted, a different conclusion could be required. As noted above, Dr. Goslin's assessment requires reexamination of whether Plaintiff's headaches are a severe impairment. In addition, acceptance of her opinions would undermine both the conclusions that Plaintiff's symptoms were not consistent with corroborating evidence and that treatment was generally effective in controlling her symptoms. Accordingly, on remand an ALJ should reconsider the credibility issue in light of the weight given to Dr. Goslin's opinions.

4. **VE's Testimony and the DOT**

In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. Gallant, 753 F.3d at 1456. A VE's testimony should be consistent with the occupational information included in the *Dictionary of Occupational Titles* (DOT) and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), and an ALJ must obtain a reasonable explanation for any apparent conflicts between a VE's testimony and those publications. Id.

Plaintiff contends that the ALJ relied on erroneous vocational testimony in concluding at step five that she could work as a call out clerk and cashier.  She argues that these positions require a reasoning level of 3 according to the DOT, which is  inconsistent with the ALJ's RFC which limited her to simple, routine, repetitive work.  She also contends that a "frequent reaching" requirement of the cashier position set out in the DOT and SCO are inconsistent with the ALJ's RFC which limited her to  "occasional overhead reaching."  Plaintiff contends that the ALJ's conclusion that she could work in these positions lacked substantial evidence because the VE presented no "persuasive evidence" supporting a deviation from these requirements.

The Commissioner contends that Plaintiff 's argument concerning the complexity of work she can perform  "incorrectly muddles vocational factors (of education development) with the residual functional capacity (of job requirements) . . . ."  I agree.  The "level 3" to which Plaintiff refers is set out in the "General Educational Development" (GED) description included in the DOT.  This level requires the ability to apply common sense understanding in carrying out instructions and dealing with "problems involving several concrete variables in or from standardized situations."   DOT Appendix C.  The Commissioner correctly notes that the educational development component of the DOT refers to an individual's achievement in reasoning, math, and language, which may be acquired through formal study, experience, or self-study.  <u>See</u> DOT (4th ed. 1991), DICOT database, Appendix C, § III, 1991 WL 688702.  The educational development referred to in the GED concerns "education of a general nature which does not have a recognized, fairly specific occupational objective."  <u>Id.</u>

Vocational factors that an ALJ is required to consider at step 5 include a claimant's education, work experience, and age.  20 C.F.R. §§ 404.1505(a), 416.905(a).  At step 5, an ALJ considers both these vocational factors and a claimant's RFC, which sets out the activities that an

individual can carry out in a work setting in spite of her mental or physical impairments.  See id.,
20 C.F.R. §§ 404.1545, 416.945.

The ALJ limited Plaintiff to simple duties which are characteristic of unskilled work.
See 20 C.F.R. §§ 404.1568(a), 416.968(a).  The call out clerk and cashier jobs that the ALJ
found Plaintiff could perform are  are both unskilled positions.  Individuals who have completed
high school are presumed to be able to perform semi-skilled and skilled work.  20 C.F.R. §§
404.1564(b)(4), 416.964(b)(4).   Given that Plaintiff has completed high school, substantial
evidence supported the ALJ's conclusion that she could perform "simple, routine, repetitive
work," and that the reasoning skills required by the call out clerk and cashier positions did not
exceed her RFC.  There is no support for Plaintiff's contention that the VE's testimony
concerning the requirements of these positions was inconsistent with the DOT.

Plaintiff's contention that the reaching requirements of the cashier position exceeded the
limitation to occasional overhead reaching set out in the ALJ's RFC fails because the DOT does
not indicate that this position requires overhead reaching.  See DOT 211.462.010, 1991 WL
671840.

## Conclusion

A judgment should be entered REVERSING the decision of the Commissioner and
REMANDING the action to the Agency for further proceedings.  The judgment should provide
that, on remand, an ALJ must consider Dr. Goslin's assessment, determine whether the record
should be further developed in light of Dr. Goslin's opinion, reconsider whether Plaintiff's
headaches constitute a "severe" impairment, and reevaluate Plaintiff's credibility in light of Dr.
Goslin's opinions.

## Scheduling Order

FINDINGS AND RECOMMENDATION - 20

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 20, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2nd day of May, 2013.


      /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge